UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

CIVIL ACTION NO. 3:11-CV-227-H

DEBRA BROWN                                                                                      PLAINTIFF

V.

HUMANA INSURANCE COMPANY                                                           DEFENDANT

**MEMORANDUM OPINION AND ORDER**

Plaintiff Debra Brown brought suit against her former employer, Defendant Humana Insurance Company ("HIC"), claiming that HIC acted improperly during the course of her employment because of her health condition.  Specifically, Brown advances two claims: (1) HIC discriminated against her on the basis of her perceived disability, in violation of the Kentucky Civil Rights Act ("KCRA"), KRS § 344.010, *et seq.*, and (2) HIC terminated her in retaliation for taking approved leave pursuant to the Family and Medical Leave Act ("FMLA"), in violation of 29 U.S.C. §§ 2611 and 2615.  HIC moves for summary judgment as to each, claiming Brown has submitted insufficient evidentiary support to sustain both claims as a matter of law.  For the foregoing reasons, the Court will deny in part and sustain in part HIC's motion.

I.

While some of the facts are in dispute, both parties agree to the general timeline of events.  HIC hired Brown on December 5, 2005 for a position in the Account Installation Department.  This department builds and implements various health insurance plans for clients, and handles changes and renewals to those plans.  HIC's health insurance plans vary in complexity based on the type of client and level of insurance sought.  HIC initially hired Brown

as an Account Installation Coordinator, and as such, she was responsible for completing the documentation necessary to install benefits for fully insured clients.  On May 5, 2008, HIC promoted Brown to Account Installation Manager ("AIM").  As an AIM, Brown essentially functioned as a project manager responsible for insuring that clients' benefit plans are correctly and timely built and installed.  AIMs handle the more complex plans.

On March 15, 2010, HIC placed Brown on a Competency and Contribution Improvement Plan ("CCIP"), which appears to be the means by which management formally notifies employees of work performance deficiencies.  Within the CCIP document, management outlines performance issues and expectations for future work performance, and stresses that continued employment is contingent upon successfully meeting stated expectations and achieving sustained work performance improvement.  Three months later, on June 16, 2010, HIC terminated Brown.

The details of Brown's performance history are disputed.  HIC divides the relevant periods of her employment into two phases.  First, beginning in June of 2009, Brown worked as an AIM under Chris Van Vreede.  Most of the HIC employees under Van Vreede, including Van Vreede herself, worked in Wisconsin, while Brown worked in Louisville, Kentucky.  Under Van Vreede, Brown allegedly refused to participate in group meetings, although Brown claims that the group did not invite her to these meetings because she worked remotely.  Van Vreede claims Brown failed to timely update the client database, missed assignment deadlines, and resisted or failed to attend one-on-one coaching sessions and work performance conference calls.  Van Vreede claims to have considered placing Brown on a CCIP.  Instead, she merely filtered more complex accounts from Brown until Brown requested, and HIC granted, Brown's transfer to Vickie Speer's group in December 2009.

This second phase of her employment under Speer was decidedly more problematic, according to HIC. Speer and HIC claim that Brown was unprepared for conference calls, failed to timely and consistently update client profiles, and made a few notable errors to clients' accounts. For example, HIC alleges that Brown set the wrong effective date for an account, leaving members of that account with lower balances and some members with insufficient funds to cover expenditures until the client caught the error. After another alleged fumble with a conference call-in number given to this same client, the client asked that HIC remove Brown from the account. On another occasion, Brown entered the incorrect maximum age for coverage of full-time students and dependents causing the client to be over-insured to their detriment. Although Brown does not contest that these two problems occurred, she later explained that the cause of the problems was miscommunication from other members of her team.

In addition to clients' complaints, apparently other HIC associates criticized Brown's performance and behavior. Periodically, HIC sends out market relations surveys to its employees to evaluate the work performance of their colleagues. Brown received several negative marks from her peers and subordinates on these surveys.

Speer spoke with management about placing Brown on a CCIP. Speer, Ed Salings, Speer's supervisor, and James Augustus, HIC's Lead Account Services Director, placed Brown on a CCIP, which cautioned Brown that she could be terminated if she did not meaningfully improve her work performance. These parties met to discuss the CCIP provisions. Brown only contested a few of the provisions in a formal response. With respect to the problems described above, Brown did not comment or excuse her involvement with those issues in the CCIP response despite HIC detailing them in the CCIP.

Four days after HIC issued Brown's CCIP, Speer claims that Brown failed to update the client database. Six days later, Speer alleges that Brown failed to update HIC's database to reflect a delayed deadline. About three months after HIC issued the CCIP, Brown sent Speer an e-mail, the contents of which Speer felt were insubordinate. Shortly thereafter, HIC terminated Brown.

Brown suffers from Crohn's disease, which her gastroenterologist Dr. Brian Dobozi explains is a chronic gastrointestinal condition that causes severe inflammation of the gastrointestinal tract. According to Dr. Dobozi, when Crohn's disease is flaring up, it causes changes in bowel habits, fatigue, and obstruction of the bowel which leads to nausea and vomiting. Diagnosed in 2007, Brown has a moderate gradation of the disease. Dr. Dobozi also diagnosed Brown with irritable bowel syndrome ("IBS"), which for Brown, displayed daily symptomology during much of her employment with HIC. IBS encompasses a broad range of gastrointestinal issues ranging from diarrhea to constipation. IBS can wax and wane on a daily or more sustained basis. Dr. Dobozi stated that Brown's health conditions caused frequent and urgent trips to the bathroom, fatigue, and an inability to function normally due to pain in her abdomen.

Brown asserts that she met work performance standards at HIC for the first few years. She claims she received glowing evaluations through the end of 2008, and HIC even selected her to participate in a talent management program. HIC contends that her work product was fine when she was an Account Installation Coordinator, and that HIC asked everyone at her level to participate in the talent program. HIC surmises that the decline in Brown's work performance was a result of her promotion and consequent increase in responsibilities. Brown disagrees. She

alleges that her supervisors became antagonistic to her work performance when her Crohn's flared up or her IBS presented symptoms. Brown suggests the hostility resulted from the amount of time she was unable to come into work, because the frequency, urgency, and consistency of her bowel movements restricted her normal functioning. At times, she had to use the restroom twenty times in a day, spending up to two hours of the day in the bathroom.

For much of her time at HIC, Brown used her vacation days and holidays to visit the doctor. During flare-ups or days when she suffered from IBS, Brown often worked from home, which Van Vreede and Speer allowed on numerous occasions. At some point during their employment relationship, Speer denied Brown's request to work from home on a standing basis, preferring to handle work-at-home requests on an as-needed basis. The last date Speer authorized Brown to work from home was December 14, 2009. From that day until March 8, 2010, Brown used vacation days when she needed to stay home for health issues. However, in early 2010, Speer encouraged Brown to apply for FMLA benefits, which allows employees with serious health conditions or who care for family members with serious health conditions to take a fixed amount of unpaid leave from work annually. Brown felt that FMLA leave would be counter-productive, because under FMLA leave rules, Brown was not to work from home. Nevertheless, at Speer's urging, Brown applied and received approval for intermittent FMLA leave. She took sixteen days of FMLA leave from March 7, 2010 through June 16, 2010.

Brown found her supervisors' attitude toward her work performance especially deleterious during her time under Speer. Brown claims, and Speer does not seem to dispute, that Speer told Brown she would have been fired if she worked in customer relations due to the amount of days she missed. On another occasion, Speer allegedly compared Brown's doctor

5

visits to doctor visits for a hurt finger, which suggested to Brown that Speer thought Brown was lying about or exaggerating her condition.[1]

## II.

Brown claims that HIC discriminated against her by failing to reasonably accommodate her disability with permission to work from home on a standing basis. Brown also alleges that HIC retaliated against her by firing her for taking FMLA leave. HIC argues that it reasonably accommodated Brown, providing her authorization to work from home as needed, and that her termination was purely the result of performance deficiencies. Accordingly, HIC asks for summary judgment on Brown's claims.

A court will grant summary judgment where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The Court reviews the evidence in the light most favorable to the nonmoving party, and the moving party must demonstrate the absence of a genuine issue of material fact or the absence of evidence to support an essential element of the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The nonmoving party must then show the existence of a disputed factual element in her case, relying on probative evidence rather than mere allegations. *Lansing Dairy, Inc. v. Epsy*, 39 F.3d 1339, 1347 (6th Cir. 1994). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

---

[1] It is unclear from the record when Speer made these comments, but the Court must take the facts in light most favorable to the moving party. Moreover, HIC does not appear to contest that Speer made these statements, just the significance thereof.

III.

Brown brings her disability discrimination claim under the KCRA. Because the language of the KCRA mirrors that of its federal counterpart, courts interpret the KCRA consistently with federal anti-discrimination law. *Howard Baer, Inc. v. Schave*, 127 S.W.3d 589, 592 (Ky. 2003); *Brohm v. JH Props., Inc.*, 149 F.3d 517, 520 (6th Cir. 1998). Accordingly, the Court will analyze this disability discrimination claim under the framework provided by the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq.* ("ADA").

"The ADA prohibits an employer from discriminating against 'a qualified individual with a disability because of the disability' in the terms and conditions of employment." *Cassidy v. Detroit Edison Co.*, 138 F.3d 629, 633 (6th Cir. 1998)(quoting 42 U.S.C. § 12112). Courts typically analyze whether an employer discriminated against an employee through the *McDonnell Douglas* burden-shifting scheme, which is implicated when the plaintiff offers circumstantial evidence of discrimination, as is most often the case. *Brooks v. Lexington-Fayette Urban Cnty. Hous. Auth.*, 132 S.W.3d 790, 797 (Ky. 2004).[2] However, the Sixth Circuit has correctly noted that failure to accommodate claims involve direct evidence. Consequently, the burden-shifting scheme does not apply. The Sixth Circuit explained,

> [C]laims premised upon an employer's failure to offer a reasonable accommodation necessarily involve direct evidence (the failure to accommodate) of discrimination. This conclusion is consistent with the definition of direct evidence, for if the fact-finder accepts the employee's version of the facts, no inference is necessary to conclude that the employee has proven this form of discrimination. . . . When an ADA plaintiff premises his claim upon direct evidence, we jettison the familiar *McDonnell Douglas* burden-shifting framework applicable in indirect-evidence cases . . . .

---

[2] According to this framework, the plaintiff must prove a prima facie case of discrimination, at which point the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the adverse action; if the defendant is successful in this regard, the plaintiff then must show that the defendant's proffered reasons for the adverse action were pretextual. *Brooks*, 132 S.W.3d at 797.

7

*Kleiber v. Honda of Am. Mfg., Inc.*, 485 F.3d 862, 868 (6th Cir. 2007) (internal citations omitted); *see also Lane v. Bremner Food Grp., Inc.*, 2010 WL 145113, *4 (W.D. Ky. Jan. 8, 2010).

Here, Brown's claim is for failure to accommodate.³ To establish a prima facie case for failure to accommodate, the plaintiff must show:

> (1) she is disabled within the meaning of the Act; (2) she is otherwise qualified for the position, with or without reasonable accommodation; (3) her employer knew or had reason to know about her disability; (4) she requested an accommodation; and (5) the employer failed to provide the necessary accommodation.

*Myers v. Cuyahoga Cnty., Ohio*, 182 F. App'x 510, 515 (6th Cir. 2006). HIC seems to contest only the first, fourth and fifth elements. The Court will address each in turn.

A.

The KCRA defines disability as "(a) A physical or mental impairment that substantially limits one (1) or more of the major life activities of the individual; (b) A record of such an impairment; or (c) Being regarded as having such an impairment." KY. REV. STAT. ANN. § 344.010(4) (2011); *see also* 42 U.S.C. § 12102(1). Examples of "major life activities include, among other things, walking, seeing, hearing, performing manual tasks, caring for oneself, speaking, breathing, learning, and working." *Howard Baer*, 127 S.W.3d at 592. The term "substantially limits" is to "be construed broadly in favor of expansive coverage" and applies where an impairment "substantially limits the ability of an individual to perform a major life activity as compared to most people in the general population." 29 C.F.R. § 1630.2(j)(1).

---

³ The Sixth Circuit recognizes two types of disability discrimination claims – disparate treatment and failure to accommodate. *Webb v. Humana Inc.*, 819 F. Supp. 2d 641, 645 (W.D. Ky. 2011); *see* 42 U.S.C. § 12112(b)(5)(A).

Congress amended the ADA in 2008. ADA Amendments Act of 2008, Pub. L. No. 110-325, 122 Stat. 3553 (2009). The Amendments Act includes the functioning of the bowels as a major life activity. 42 U.S.C. § 12101(2)(B). However, Kentucky has yet to adopt the amendments. *White v. Humana Ins. Co.*, 2011 WL 3715046, *2 (W.D. Ky. Aug. 23, 2011). Nevertheless, the Court is satisfied for the purposes of this analysis to consider Crohn's disease and IBS as a disability under the KCRA. *Accord Workman v. Frito-Lay, Inc.*, 165 F.3d 460, 467 (6th Cir. 1999)(holding that "the jury could have decided that controlling one's bowels is a major life activity . . . if they chose to credit evidence that she needed to be free to go to the bathroom whenever she felt the urge as an important element of her [job]"). At the very least, using the restroom twenty times in one day, which in Brown's case meant she could spend up to two hours in the restroom in a single day, combined with the abdominal pain her doctor described as accompanying Crohn's flare-ups and IBS symptoms, would likely impede an individual's ability to work, which is considered a major life activity under the KCRA. *See Howard Baer*, 127 S.W.3d at 592 (including working in list of major life activities). Accordingly, the Court is satisfied that Brown provided sufficient evidence to support this element of her claim.[4]

B.

Moving to the fourth element, the ADA defines a "qualified individual with a disability" as "an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. §

---

[4] The Court recognizes that HIC takes issue with this element, arguing that in Brown's depositions, she admitted that her Crohn's disease did not interfere with her normal daily activities. However, the Court finds the evidence that Brown had to take FMLA leave or work from home on occasion when suffering from health issues, and that her doctor testified that Crohn's could affect daily functioning, sufficient to submit this element of the claim to the jury.

12111(8). Under a failure to accommodate claim, Brown must have initially proposed an accommodation that is objectively reasonable. *Cassidy*, 138 F.3d at 634-35.[5]

> According to the ADA, a reasonable accommodation may include
>
> > (A) making existing facilities used by employees readily accessible to and usable by individuals with disabilities; and
> > (B) job restructuring, part-time or modified work schedules, reassignment to a vacant position, acquisition or modification of equipment or devices, appropriate adjustment or modifications of examinations, training materials or policies, the provision of qualified readers or interpreters, and other similar accommodations for individuals with disabilities.

42 U.S.C. § 12111(9). Brown requested a permanent work-from-home accommodation. Speer refused to grant her the work-from-home option on a standing basis. Later, she encouraged Brown to file for FMLA leave, which would require Brown to take off work completely when she suffered from symptoms of Crohn's disease or IBS.

Without a doubt, working from home may be a reasonable accommodation under some circumstances. However, the Sixth Circuit, in agreement with the Seventh and Fourth Circuits, has held that the ADA does not require employers to permit employees to work from home, "where their productivity inevitably would be greatly reduced." *Smith v. Ameritech*, 129 F.3d 857, 867 (6th Cir. 1997)(quoting *Vande Zande v. Wisconsin*, 44 F.3d 538, 545 (7th Cir. 1995)). In fact, the Sixth Circuit stated that it would be an "exceptional case" where a work-from-home accommodation would be reasonable. *Id.*

Working from home can be an impediment to the smooth functioning of a business when the job responsibilities of the person working from home are time-sensitive and team-oriented. Both HIC and Brown agree that an AIM's job responsibilities are of this type. According to the

---

[5] Once Brown shows she proposed a reasonable accommodation, the "employer then has the burden of persuasion to show that an accommodation would impose undue hardship." *Cassidy*, 138 F.3d at 634-35 (internal citation omitted). However, the Court does not reach this question.

record, HIC granted no other AIMs permission to work from home on a standing basis. Brown has not shown that this is an exceptional case where working from home would not impede work productivity. Thus, Brown failed to propose an objectively reasonable accommodation.

Brown argues that the FMLA and its corresponding regulations required HIC to engage in a good faith interactive process to determine a reasonable accommodation. The regulations specifically state that, "[t]o determine the appropriate reasonable accommodation it may be necessary for the covered entity to initiate an informal, interactive process with the qualified individual with a disability in need of the accommodation." 29 C.F.R. § 1630.2(o)(3). According to the Sixth Circuit, "the interactive process is mandatory, and both parties have a duty to participate in good faith. When a party obstructs the process or otherwise fails to participate in good faith, 'courts should attempt to isolate the cause of the breakdown and then assign responsibility.'" *Kleiber*, 485 F.3d at 871 (quoting *Bultemeyer v. Fort Wayne Cmty. Schs.*, 100 F.3d 1281, 1285 (7th Cir. 1996)) (internal citations omitted).

Brown has not shown that HIC failed in this responsibility. She argues that Speer unilaterally rescinded her work from home accommodation, although the record is replete with evidence of such an action. Brown cannot identify a time when Speer refused to permit Brown to work from home. In fact, the policy permitting employees to work from home on an as-needed basis still seems to be in place at HIC. Moreover, Brown has not alleged that Speer refused to discuss working from home with her. Brown has not shown that HIC lacked good faith in dealing with her requests to work from home; Speer did not ignore her requests, but rather granted them when asked on an as-needed basis. Accordingly, Brown's failure to accommodate claim fails on this element alone.

C.

The Court finds that Brown's claim also fails on the fifth element of a failure to accommodate claim, which requires that Brown show that HIC refused her reasonable accommodation. HIC asserted, and Brown does not contest, that when she requested to work from home on an as-needed basis, Speer allowed her to do so. This, Speer contends, is HIC's policy for its AIMs.

"An employee cannot make his employer provide a specific accommodation if another reasonable accommodation is instead provided." *Hankins v. Gap, Inc.*, 84 F.3d 797, 800-01 (6th Cir. 1996). HIC's policy of allowing Brown to work from home on an as-needed basis is reasonable, as it achieves the same end as Brown's desire to work from home on a standing basis, but merely requires further communication with HIC when she needs to work from home. *Accord Trout v. Elec. Data Sys. Corp.*, 151 F. App'x 390, 399 (6th Cir. 2005)("It is undisputed that [defendant] accommodated [plaintiff's known] limitations by allowing [plaintiff] simply to call off work, without penalty, when she felt unable to come in. It is true that she was not allowed to work from home . . . , but she was entitled only to a reasonable and effective accommodation, not necessarily the accommodation of her choosing."). Moreover, HIC also reasonably accommodated Brown by making leave available to her.[6] *Id.* Brown was aware of, and took advantage of, both these accommodations at various points in her employment with HIC. Given the apparent availability of reasonable accommodations, the Court finds Brown's

---

[6] Brown seems to imply that when Speer encouraged her to submit the paperwork to obtain FMLA leave, Speer somehow forced her to forgo her opportunity to call in and work from home as needed. However, Brown is unable to identify any time when Speer denied her permission to work from home when she so requested, except for the denial of her request to work from home on a standing basis. Accordingly, Brown does not allege sufficient facts or support facts with sufficient evidence to support a claim that HIC took away her right to request to work from home on an as-needed basis by suggesting she take advantage of FMLA protections.

failure to accommodate claim fails on this ground as well. *Id.* Because Brown fails on two counts to establish a prima facie case, the Court's analysis ends.

IV.

Turning now to Brown's second claim, the FMLA entitles qualified employees to take up to twelve weeks of unpaid leave each year if the employee has a serious health condition rendering her unable to perform her job. 29 U.S.C. § 2612(a)(1)(C)-(D). A "serious health condition" is "an illness, injury, impairment, or physical or mental condition that involves -- (A) inpatient care in a hospital, hospice, or residential medical care facility; or (B) continuing treatment by a health care provider." 29 U.S.C. § 2611(11). The Sixth Circuit recognizes two types of claims for an employer's improper conduct regarding FMLA leave: "(1) the 'entitlement' or 'interference' theory arising from 29 U.S.C. § 2615(a)(1); and (2) the 'retaliation' or 'discrimination' theory arising from 29 U.S.C.§ 2615(a)(2)." *Hoge v. Honda of Am. Mfg., Inc.*, 384 F.3d 238, 244 (6th Cir. 2004). Brown asserts a retaliation claim.[7] Where

---

[7]     HIC argues in its Reply that Brown's claim is an interference claim, because Brown takes the position that HIC forced her to take FMLA leave. However, Brown's Complaint makes clear that her FMLA claim is for retaliation. ECF No. 1-1 ("Defendant terminated the Plaintiff for taking approved leave pursuant to the Family and Medical Leave Act, in violation of 29 U.S.C.S. § 2611 and § 2615."). HIC formulates Brown's claim as interference with her rights when Speer forced her to take FMLA leave involuntarily. However, the Court understands Brown's statements to that end as evidence to support her contentions of HIC's improper motive.

If HIC is correct as to Brown's interference claim, such a claim likely would not lie. In *Sista v. CDC Ixis North America, Inc.*, 445 F.3d 161, 175 (2d Cir. 2006), the Second Circuit held that the "FMLA says nothing about an employer's ability to 'force' an employee to take such leave, and such forced leave, by itself, does not violate any right provided by the FMLA." Only where "such a forced leave interfered with, restrained, or denied the exercise or attempted exercise of a right provided under the FMLA" could Brown make such a claim. *Id.* The Sixth Circuit recognized that other courts have made such a holding, without itself addressing the issue. *Hicks v. Leroy's Jewelers, Inc.*, 225 F.3d 659, *4 (6th Cir. 2000)(unpublished table decision). Moreover, because HIC allowed Brown to take no less than sixteen days of FMLA leave between the time she received FMLA approval and her termination, she could not reasonably make such a claim.

there is no direct evidence, as is the case here, the *McDonnell Douglas* burden shifting scheme applies.[8]  *Donald v. Sybra, Inc.*, 667 F.3d 757, 762 (6th Cir. 2012).

A.

To establish a prima facie case of retaliation, Brown must show that: (1) she engaged in a statutorily protected activity; (2) HIC knew she was so acting; (3) she suffered an adverse employment action; and (4) the exercising of her FMLA rights was causally connected to the adverse employment action. *Seeger v. Cincinnati Bell Tel. Co., LLC*, 681 F.3d 274, 283 (6th Cir. 2012). "The burden of proof at the prima facie stage is minimal; all the plaintiff must do is put forth some credible evidence that enables the court to deduce that there is a causal connection between the retaliatory action and the protected activity." *Dixon v. Gonzales*, 481 F.3d 324, 333 (6th Cir. 2007).

HIC seems to only dispute the causal connection element of the prima facie case for retaliation.[9] Brown cites the temporal proximity between her FMLA leave and her termination as evidence of causation. Brown received approval for intermittent FMLA leave on March 8,

---

[8] The burden-shifting scheme only operates when the plaintiff cannot show direct evidence of discrimination. *Bryson v. Regis Corp.*, 498 F.3d 561, 570 (6th Cir. 2007). In this case, Brown argues that she has direct evidence of a discriminatory animus through Speer's comments downplaying her condition or suggesting she would be fired if she worked in another department. Direct evidence is evidence "which, if believed, requires the conclusion that unlawful [retaliation] was at least a motivating factor in the employer's actions." *Jacklyn v. Schering-Plough Healthcare Prods. Sales Corp.*, 176 F.3d 921, 926 (6th Cir. 1999). While Speer's comments are discriminatory in nature, one can only infer retaliation from the statements, and therefore, these comments cannot constitute direct evidence. *See Amini v. Oberlin Coll.*, 440 F.3d 350, 359 (6th Cir. 2006)(finding that direct evidence "does not require the fact finder to draw any inferences to reach th[e] conclusion [that the employer retaliated]").

[9] Additionally, HIC also states that Brown cannot demonstrate that HIC terminated her *solely* because she invoked her FMLA rights. However, the Court finds no legal support for the proposition that a FMLA retaliation claim requires the plaintiff to show that the employee's termination was *solely* due to FMLA leave. Rather, the language is reminiscent of the language used for a prima facie disability discrimination claim under *Monette v. Electronic Data Systems Corp.*, 90 F.3d 1173, 1178 (6th Cir. 1996). The Sixth Circuit abandoned the *solely* causation standard for disability discrimination in favor of the "but-for" standard. *See Lewis v. Humboldt Acquisition Corp., Inc.*, 681 F.3d 312, 320 (6th Cir. 2012). Kentucky courts seem to adopt the same change in causation standard. *Hammond v. Norton Healthcare, Inc.*, 2012 WL 5039465, *4 (Ky. Ct. App. Oct. 19, 2012). Accordingly, the Court analyzes neither the disability discrimination claim nor FMLA retaliation claims under a *solely* causation standard.

2010.  Within one week, on March 15, 2010, HIC placed her on a CCIP.  Brown took sixteen FMLA leave days.  Around three months after she received FMLA approval and one day after she took her last FMLA leave day, HIC terminated Brown.  Brown argues this evidence is sufficient to satisfy her burden to prove a prima facie claim for FMLA retaliation.

HIC argues that temporal proximity alone is insufficient to support Brown's initial burden.  It further argues that Brown's health and her absence from work did not play a role in the decision to place her on the CCIP or terminate her employment.  Speer placed other individuals without health conditions on CCIPs, and other employees took FMLA leave without repercussion.  Moreover, Speer encouraged Brown to take FMLA leave.  HIC argues that this evidence is sufficient to overcome Brown's burden to prove a prima facie case for retaliation.  This presents a close question, because, quite frankly, it is difficult to set out "hard and fast" rules where evidence can be so nuanced and mixed.

Not surprisingly,"this Circuit has not adopted a uniform approach on whether causal connection may be established solely on the basis of temporal proximity."  *Krumheuer v. GAB Robins N. Am., Inc.*, 484 F. App'x 1, 5 (6th Cir. 2012).  On one hand, the Sixth Circuit "has embraced the premise that in certain distinct cases where the temporal proximity between the protected activity and the adverse employment action is acutely near in time, that close proximity is deemed indirect evidence such as to permit an inference of retaliation to arise." *DiCarlo v. Potter*, 358 F.3d 408, 421 (6th Cir. 2004); *see also Mickey v. Zeidler Tool & Die Co.*, 516 F.3d 516, 525 (6th Cir. 2008)("Where an adverse employment action occurs very close in time after an employer learns of a protected activity, such temporal proximity between the events is significant enough to constitute evidence of a causal connection for the purposes of satisfying

a prima facie case of retaliation."); *Bryson*, 498 F.3d at 571 (finding a three-month lapse in time between the plaintiff's request for FMLA leave and her termination sufficient temporal proximity for plaintiff to establish causation).

On the other hand, in other situations, the Sixth Circuit has also required something more than temporal proximity to establish the causal connection. *See Nguyen v. City of Cleveland*, 229 F.3d 559, 566 (6th Cir. 2000)(finding that "there may be circumstances where evidence of temporal proximity alone would be sufficient to support that inference," but in this case, "the fact of temporal proximity alone was not particularly compelling, because the plaintiff's retaliation claim was otherwise weak, and there was substantial evidence supporting the defendant's version of the events.").[10] However, more recently published Sixth Circuit cases seem to suggest that temporal proximity alone is sufficient where the temporal proximity is significant, and this is likely the prevailing standard in the Sixth Circuit. *See Mickey*, 516 F.3d at 525; *Blosser*, 2013 WL 1316344, at *4. Here, HIC placed Brown on a CCIP, arguably an adverse employment action,[11] one week after she received FMLA approval, and terminated her

---

[10] *Nguyen* seems to still be good law in the Sixth Circuit, carving out room for weaker cases where temporal proximity alone is insufficient to establish a causal connection. As explained in *Blosser v. AK Steel Corp.*, 2013 WL 1316344, *4 (6th Cir. Apr. 2, 2013), temporal proximity alone is sufficient where the adverse employment action is close enough in time to the protected activity; but where temporal proximity is more strained, additional evidence is required. If *Nguyen* is applicable to this case, the facts *sub judice* demonstrate a difficult case analytically, because Brown does not submit a large amount of evidence showing retaliation and HIC's contentions are reasonable. However, Brown provides evidence of temporal proximity in addition to arguably improper HIC conduct that presents a juror question as to the causal connection, as supported by Speer's comments regarding Brown's absences from work and minimizing the seriousness of Brown's health condition. Therefore, Brown provides enough evidence to support an inference of causation even under the *Nguyen* standard.

[11] In *Keys v. Humana, Inc.*, 2010 WL 2961186, *3 (W.D. Ky. July 26, 2010), Judge Simpson analyzed whether placing the plaintiff on a performance improvement plan was an adverse employment action. The plaintiff argued that the performance evaluation eventually resulted in the loss of her job, and the Court found this sufficient to make out an adverse action for purposes of her Title VII discrimination case. Although the Sixth Circuit reversed this decision, finding that application of the *McDonnell Douglas* burden shifting scheme inappropriate at the Motion to Dismiss stage, *Keys v. Humana, Inc.*, 684 F.3d 605, 609-10 (6th Cir. 2012), the Court finds this reasoning persuasive. However, the Court declines to rule on whether placement on a CCIP constitutes an adverse employment action in the present circumstance, because other evidence shows significant temporal proximity.

three months after the approval. One week is certainly significant temporal proximity, if placement on a CCIP is an adverse employment action, and regardless, according to the Sixth Circuit, three months is close enough temporal proximity to raise an inference of causation. *See Bryson*, 498 F.3d at 571. Because HIC does not contest the other elements of a prima facie case for FMLA retaliation, Brown has satisfied her initial burden on summary judgment.

B.

Next, the burden shifts to HIC to articulate legitimate, non-discriminatory reasons for Brown's termination. The Court finds, and Brown does not seem to contest, that HIC satisfied this burden. HIC argued the following: Brown had repeated problems with her supervisors; her colleagues gave her poor evaluative marks; on one occasion, a client requested her removal from the account; she caused another client to be over-insured due to inserting the incorrect maximum dependent and student age into the client's insurance plan; and she mishandled updating client profiles and HIC databases on occasion. HIC supports these allegations with affidavits and other reliable documents. A reasonable jury could find these problems sufficient to show legitimate, nondiscriminatory reasons for Brown's termination.

C.

Now, the burden shifts back to Brown to show that HIC's articulated reasons were mere pretext. Brown can establish pretext by showing: "(1) that the proffered reasons had no basis *in fact*; (2) that the proffered reasons did not *actually* motivate [her] discharge; or (3) that they were *insufficient* to motivate discharge." *Russell v. Univ. of Toledo*, 537 F.3d 596, 604 (6th Cir. 2008). The first and third paths are unavailable here.[12] Therefore, Brown contends that the

---

[12] Brown argues that the documented work performance issues were minute and trivial, and therefore could not have led to her termination. In her view, this establishes that HIC's proffered reasons for her termination were insufficient to motivate her discharge. Brown also attempts to explain away most of the cited performance

17

proffered reasons did not actually motive her discharge. However, HIC contends that because Brown admitted to some of her work performance problems, she cannot show pretext. Though HIC makes a persuasive argument, as a matter of law, however, it does not preclude pretext here.

First, it is important to note that temporal proximity alone cannot support a showing of pretext. *See Skrjanc v. Great Lakes Power Serv. Co.*, 272 F.3d 309, 317 (6th Cir. 2001)("[T]emporal proximity is insufficient in and of itself to establish that the employer's nondiscriminatory reason for discharging an employee was in fact pretextual."); *Cutcher v. Kmart Corp.*, 364 F. App'x 183, 191 (6th Cir. 2010); *Hashemian v. Louisville Reg'l Airport Auth.*, 2010 WL 3001972, *7 (W.D. Ky. July 28, 2010); *Cunningham v. Humana Ins. Co.*, 2011 WL 3878317, *4 (W.D. Ky. Aug. 31, 2011). "However, this court has found that 'suspicious timing is a strong indicator of pretext when accompanied by some other, independent evidence.'" *Ritenour v. Tenn. Dep't of Human Servs.*, 497 F. App'x 521, 533 (6th Cir. 2012)(quoting *Bell v. Prefix, Inc.*, 321 F. App'x 423, 426 (6th Cir. 2009)).

Here, Brown also presents evidence of inappropriate comments that Speer made to her regarding her FMLA leave. Speer commented that if Brown worked in another department, HIC would have fired her for all the days she took off. Speer also likened her doctor visits to doctor visits for a hurt finger. These comments speak directly to Speer's mental state. Although errant or benign comments from co-workers typically will not give rise to an inference of pretext, *see*

---

deficiencies in an attempt to show that the proffered reasons had no basis in fact. The Court finds these arguments unavailing. Employers are entitled to the protection of the honest belief rule, which prevents a finding of pretext where an employer reasonably relied on facts known to it in making its decisions even though those facts eventually proved untrue or exaggerated. *Joostberns v. United Parcel Servs., Inc.*, 166 F. App'x 783, 794-95 (6th Cir. 2006). The Sixth Circuit recognizes this rule because "it is inappropriate for the judiciary to substitute its judgment for that of management." *Smith v. Leggett Wire Co.*, 220 F.3d 752, 763 (6th Cir. 2000). Accordingly, the Court will not find pretext based on Brown's contentions that HIC was wrong in blaming her for the work performance problems detailed within this Opinion.

*Donald*, 667 F.3d at 763 (holding that where the subtext of the comment about disability leave did not suggest any discriminatory animus, the evidence was insufficient to create an inference of pretext), these comments are sufficiently related to Brown's health condition and her need to take days off from work that a reasonable juror might reasonably infer an improper motive on behalf of Speer given that Speer apparently was instrumental in Brown's placement on the CCIP and subsequent termination.  Therefore, Brown has met her burden to show pretext.

The Court recognizes that this determination is a close call.  Although Brown received positive evaluations for the first few years of her employment with HIC, which ultimately culminated in her promotion to AIM, HIC documented Brown's performance issues well before she began to take FMLA leave.  *See Cox-Frietch v. Ohio Bureau of Workers' Comp.*, 2012 WL 6051972, *3 (6th Cir. Dec. 6, 2012)(slip op.).  Nevertheless, HIC's reactions to Brown's performance issues became decidedly more serious after Brown received FMLA approval and she began taking leave.  Taking the facts in the light most favorable to Brown, the Court finds that Brown has presented genuine issues of material fact sufficient to overcome summary judgment on the FMLA retaliation claim.

Being otherwise sufficiently advised,

IT IS HEREBY ORDERED that Defendant's Motion for Summary Judgment as to Plaintiff's claim for disability discrimination under the Kentucky Civil Rights Act is SUSTAINED, and the claim is DISMISSED WITH PREJUDICE.

IT IS FURTHER ORDERED that Defendant's Motion for Summary Judgment as to Plaintiff's claim for Family and Medical Leave Act retaliation is DENIED.

The Court will set a conference in the near future.

cc:     Counsel of Record